## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Second Story Farming, Inc., d/b/a | : | |
| Metropolis Farms | : | |
| 2409 S. Water Street | : | |
| Philadelphia, PA 19148, | : | CIVIL ACTION |
|      Plaintiff | : | |
|      v. | : | |
| Arthur S. McHenry, CPA (individually) | : | |
| 127 W. Chester Pike | : | |
| Ridley Park, PA 19078 | : | No.: |
| | : | |
| MAC Business Services | : | |
| 127 W. Chester Pike | : | |
| Ridley Park, PA 19078 | : | |
| | : | |
| Prestige Capital, Ltd. | : | |
| 127 W. Chester Pike | : | |
| Ridley Park, PA 19078 | : | |
| | : | |
| Be The Bank Investments | : | |
| 127 W. Chester Pike | : | |
| Ridley Park, PA 19078 | : | |
| | : | |
| Kenneth Herman | : | |
| 2005 Palmer Ave | : | |
| Larchmont, NY 10538 | : | |
|      and | : | |
| Jason Offenhartz | : | |
| 884 W End Ave. | : | |
| New York, NY 10025, | : | |
|           Defendants | : | |

## COMPLAINT

Plaintiff, Second Story Farming, Inc. d/b/a Metropolis Farms ("Second Story Farming"),

by and through its undersigned counsel hereby asserts the following Complaint against Defendants

and in support thereof states the following:

## THE PARTIES

1.     Plaintiff Second Story Farming, d/b/a Metropolis Farms, is a Delaware Corporation

with its principal place of business at 2409 S. Water Street, #2, Philadelphia, PA 19148.

5139475v1

2.      Plaintiff Second Story Farming is in the business of developing and manufacturing sustainable vertical farming technologies which allow urban communities to access fresh produce.

3.      Jack Griffin is the principal and founder of Plaintiff Second Story Farming.

4.      Defendant Arthur S. McHenry, III ("Defendant McHenry") is an adult individual with a business address of 127 W. Chester Pike, Ridley Park, PA 19078.

5.      Defendant McHenry is the principal owner and operator of Defendant MAC Business Services, Ltd. ("Defendant MAC"), which has a business address of 127 W. Chester Pike, Ridley Park, PA 19078.

6.      Defendant McHenry is the principal owner and operator of Defendant Prestige Capital, Ltd. ("Defendant Prestige"), which has a business address of 127 W. Chester Pike, Ridley Park, PA 19078.

7.      Defendant McHenry is the principal owner and operator of Defendant Be the Bank Investments ("Defendant BTB"), which has a business address of 127 W. Chester Pike, Ridley Park, PA 19078.

8.      Defendants MAC, Prestige and BTB are all under the complete control of and function as alter-egos of Defendant McHenry.

9.      Defendant Kenneth Herman ("Defendant Herman") is an individual with a business address of 2005 Palmer Ave, Larchmont, NY 10538.

10.     Defendant Jason Offenhartz ("Defendant Offenhartz") is an individual with a business address of 884 W End Ave., New York, NY 10025.

11.     Both Defendants Herman and Offenhartz are associates and business team members of Defendant McHenry and operate under Defendant McHenry's direction and control.

2

## JURISDICTION AND VENUE

12.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 inasmuch as this action involves a federal question under the civil Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961, *et seq*.  This Court has supplemental jurisdiction over Plaintiff's claims under 28 U.S.C. §1367.

13.     Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2) inasmuch as a substantial part of the events giving rise to Plaintiff's claims against Defendants arise in this judicial district.

## FACTS COMMON TO ALL COUNTS

14.     Between 2014 and 2016, Mr. Griffin, through Plaintiff Second Story, developed unique physical and software technologies for efficient vertical urban farming for which he and his companies obtained numerous patents. True and correct copies of articles detailing the work of Mr. Griffin, Metropolis Farms and Plaintiff Second Story are attached hereto, incorporated herein and marked as **Exhibit 1**.

15.     Mr. Griffin's unique vertical farming technology is capable of growing two million pounds of produce in just 14,000 square feet and uses one-tenth of the energy of other systems.  It uses solar power and allows for the recapture of significant amounts of the water used to grow the crops.

16.     On or about April 18, 2016, Mr. Griffin and Plaintiff Second Story Farming hired Defendants McHenry and BTB to perform various tasks including, but not limited to, raising capital for corporate growth and operations and general accounting and bookkeeping.

17.     As part of establishing the business relationship, on April 18, 2016, Plaintiff and Defendant BTB entered into a Confidentiality and Nondisclosure Agreement (the "Nondisclosure

3

Agreement"). A true and correct copy of the Nondisclosure Agreement is attached hereto, incorporated herein and marked as **Exhibit 2**.

18.     The Nondisclosure Agreement binds not only Defendant BTB, but also Defendant BTB's members, partners, employees, contractors, agents, consultants and representatives, including Defendants McHenry, Herman, Offenhartz, Prestige and MAC.

19.     The Nondisclosure Agreement provides that, in connection with the parties' intent to enter into business activities, Plaintiff Second Story Farming may provide to Defendants certain Confidential Information with respect to Plaintiff's business, clients, products, services, system, plans and methods of operation. Exh. 2, at ¶ B.

20.     "Confidential Information" is defined by the Nondisclosure Agreement to include "any knowledge, data, statistics, business plans, records, trade secrets, business secrets, operational methods, customer lists, concepts, ideas, personal information of principals and employees, policies and/or other information or data disclosed" to Defendants by Plaintiff and/or by Plaintiff's officers, agents, employees, consultants or representatives. Exh. 2, p. 1.

21.     The Nondisclosure Agreement provides that Defendants will keep the Confidential Information "strictly confidential and not use or exploit any of the Confidential Information in any manner" without Plaintiff's written consent. Exh. 2, ¶ 2.

22.     The Nondisclosure Agreement provides that Defendants, "shall not, either directly or indirectly, publish or disclose any Confidential Information subject to this Agreement or use such Confidential Information for the benefit of BTB, another party or any third parties" without Plaintiff's prior written consent. Exh. 2, ¶ 3.

23.     The Nondisclosure Agreement provides that:

all contacts and or introduction made by The Company[1] are a trade secret and the exclusive and sole property of The Company for a period of 5 years from the date of this agreement. BTB, its Members and or Partners agree not to contact, initiate contact, or attempt to do business with, at any time for any purpose, either directly or indirectly, with any officers, directors, shareholders, consultants, attorneys, employees, former employees agents business contact, political contact, vendors, customers, or other affiliates of The Company, or otherwise any contact referred or introduced to BTB by The Company....

Exh. 2, ¶ 7.

24.     The Nondisclosure Agreement allows for Plaintiff Second Story Farming to obtain injunctive relief in the event that Defendants breach the Agreement:

BTB acknowledges that a breach of the terms, covenants or conditions contained in this Agreement will cause irreparable damage for which a remedy at law may not be adequate. In the event of such a breach or threatened breach, The Company shall be entitled to seek appropriate injunctive relief in any court of competent jurisdiction, restraining BTB and its Employees from any such threatened or actual violation of the provisions of this Agreement....

Exh. 2, ¶ 8.

25.     Between April, 2016 and the end of 2017, Plaintiff Second Story Farming pursued several business opportunities in Philadelphia, New Jersey, Florida and Colorado. Defendants had access to Plaintiff's information and contacts regarding these business dealings.

26.     In his capacity as Plaintiff's CPA, Defendant McHenry also had access to all of Plaintiff's banking records, corporate records and records of all of Plaintiff's existing clients, contacts, shareholders and joint ventures.

27.     In direct violation of the Nondisclosure Agreement, sometime in or around November 20, 2017, Defendants began contacting Plaintiff's clients, joint venture partners,

---

[1] "The Company" is defined by the Nondisclosure Agreement as Second Story Farming, Inc. dba Metropolis Farms.

5139475v1

contacts and consultants for the purpose of intervening, taking over and supplanting the existing contracts and activities between Plaintiff and these parties.

28.     In at least one instance, Defendant McHenry, using the business entity "Brotherly Budds," contacted Plaintiff's business consultant to interfere with its contract with Plaintiff.

29.     As detailed in correspondence from one of Plaintiff's business consultants, The Juday Group, which is attached hereto, incorporated herein and marked as **Exhibit 3**:

> In November I received a proposed "operating agreement" from Arthur McHenry offering an equity stake for the organization of a company to be called Brotherly Budds. Under the proposal, equity was offered for the consideration of directing all potential business leads, professional contacts and opportunities to the proposed company in lieu of financial investment. I considered this solicitation as an inducement to terminate or circumvent my contract with Metropolis Farms.

30.     Defendants have similarly contacted one of Plaintiff's business contacts in Colorado stating they represent a group of investors that want to take over Plaintiff's business activities.

31.     In 2017, Plaintiff was in the process of negotiating an agreement to purchase property from Green Farmers, LLC in Pueblo, Colorado.

32.     Defendants attempted to usurp the prospective contact by sending a Letter of Intent to purchase the same property from Green Farmers, LLC that Plaintiff was attempting to purchase. A true and correct copy of Defendants' Letter of Intent For Purchase of Real Property is attached hereto, incorporated herein and marked as **Exhibit 4**.

33.     As an attachment to their Letter of Intent, Defendants included a statement about Defendant Prestige Capital which contained numerous false claims regarding Plaintiff and in which Defendants claimed that they owned – or would soon own – Plaintiff's technology, patents and business. *See* Exh. 4.

6

34.     Defendants falsely claimed that they were about to be the controlling owner of Plaintiff Second Story Farming:

> Prestige Capital is also an investor in (and soon expects to be a controlling owner of) an emerging aggrotech company that is poised to revolutionize agriculture with its indoor hydroponic vertical growing technology.

*See* Exh. 4.

35.     Defendants further falsely represented that they owned the very patents which are in fact owned by Plaintiff:  "with over 20 patents pending and filed related to indoor vertical farming methods and technology, we seek to become a leader in indoor farming innovation…". *See* Exh. 4.

36.     In their endeavor, Defendants are also making false and disparaging statements to Plaintiff Second Story Farming's clients, contacts and consultants in an attempt to redirect Plaintiff's business and potential business to Defendants.

37.     For instance, Defendants represented to The Juday Group that a group of investors referred to as "the Russians" were dissatisfied with Plaintiff and intended to file actions against Plaintiff.  *See* Exh. 3.

38.     Defendants further and falsely represented that Plaintiff was, or on the verge of being, financially insolvent and would soon be out of business. *See* Exh. 3.

39.     Plaintiff has received calls from several other business partners in current and pending joint ventures, clients, associates and contacts stating they have received similar communications.

40.     Defendants have no authority to contact these individuals on behalf of Plaintiff.

5139475v1

41.     In addition to Defendants' attempts at interfering with Plaintiff's business as detailed above, Plaintiff has learned that Defendants engaged in numerous fraudulent activities during the last eighteen months in connection with Plaintiff's business.

42.     On or about August 1, 2017, Defendants McHenry, Herman and Offenhartz created and emailed a fraudulent Purchase Order in the amount of $38,795,000.00 to Plaintiff, which purported to represent the purchase of equipment by S&F Holdings. A copy of the email header, the attached fraudulent Purchase Order and a letter dated December 6, 2017 from the company's owner confirming the fraud have been attached as **Exhibit 5**.

43.     Defendants McHenry, Herman and Offenhartz, attempted to use the fraudulent Purchase Order to claim compensation for their "work" in the form of 40% of the common stock from the Plaintiff before any funds under the Purchase Order were ever received.

44.     Although the Purchase Order is purportedly signed by S&F Holdings' principal, Louis Campisano, Plaintiff has now learned from Mr. Campisano that his signature is a forgery and that the Purchase Order from his company is fraudulent. A true and correct copy of Mr. Campisano's letter is attached hereto, incorporated herein and marked as **Exhibit 6**.

45.     Plaintiff has additionally learned that Defendant McHenry is falsely representing himself to be the Chief Financial Officer of Plaintiff Second Story Farming.

46.     At no time was Defendant McHenry the CFO of Plaintiff or was Defendant McHenry an officer or director of Plaintiff Second Story Farming.

5139475v1

## COUNT I
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (RICO), 18 U.S.C. § 1961, ET SEQ.

47.     Plaintiff hereby incorporates the above paragraphs by reference as though fully set forth herein at length.

48.     At all relevant times, Defendants McHenry, Herman and Offenhartz were "persons" within the meaning of 18 U.S.C. § 1961 (the "RICO Defendants").

49.     At all relevant times, Defendants MAC, Prestige and BTB were an enterprise engaged in or affecting interstate commerce within the meaning of 18 U.S.C. § 1961 (the "Enterprise").

50.     At all relevant times the RICO Defendants were associated with the Enterprise.

51.     At all relevant times, the RICO Defendants directly or indirectly conducted or participated in conducting the affairs of the Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

52.     The pattern of racketeering activity continued from at least 2016 to the present.

53.     The pattern consisted of two or more related instances of mail fraud and wire fraud.

54.     The RICO Defendants knowingly used the U.S. Mails and/or interstate wires in furtherance of the scheme to defraud Plaintiff.

55.     The specific acts taken by the RICO Defendants in violation of 18 U.S.C. 1961 et seq. include, but are not limited to, the following:

   a.     On August 1, 2017, the RICO Defendants caused a forged and fraudulent Purchase Order in the amount of $38.795 million to be sent by email over interstate wires. *See* Exhs. 5, 6;

9

5139475v1

  b.  In or about November and December, 2017, the RICO Defendants utilized interstate communication facilities by placing phone calls to Plaintiff's vendor, The Juday Group, in which the RICO Defendants falsely represented that "Russian" investors would be taking legal action against Plaintiff, for the purpose of causing The Juday Group to terminate its contract with the Plaintiff. *See* Exh. 3;

  c.  On or about November 15, 2017, the RICO Defendants utilized interstate communications facilities by sending a Letter of Intent to Plaintiff's prospective client in which Defendants attempted to induce the prospective client to enter into a contact with Defendants by falsely representing that Defendants were about to own Plaintiff's business and that Defendants owned the numerous technology patents actually owned by Plaintiff. See Exh. 4; and

  d.  Upon information and belief, the RICO Defendants made additional uses of interstate communication facilities, including placing phone calls and transmitting written communications through the U.S. Mail and via interstate wires.

56. The foregoing predicate acts are related in that they have similar purposes, similar participants and similar methods.

57. The knowing participation of the RICO Defendants in engaging in a pattern of activity to interfere with Plaintiff's existing and perspective contracts, to usurp Plaintiff's Confidential Information for the RICO Defendants' advantage and to disparage Plaintiff and Jack Griffin is part of a conspiracy among the RICO Defendants.

5139475v1

58.    The RICO Defendants' actions have caused, and continue to cause, substantial non-monetary and monetary harm to Plaintiff.

59.    There is a threat of future racketeering activity because the RICO Defendants have not abated their fraud and deceit with regard to their attempts to utilize Plaintiff's Confidential Information for their benefit and to the exclusion of, and harm to, Plaintiff Second Story Farming.

**WHEREFORE,** Plaintiff Second Story Farming demands judgment in its favor and against Defendants jointly and severally, together with an award of compensatory damages, trebled damages, interest, costs, reasonable attorneys' fees and such other further relief as this Court may deem appropriate.

## COUNT II
## <ins>BREACH OF CONTRACT</ins>
### (Nondisclosure Agreement)

60.    Plaintiff hereby incorporates the above paragraphs by reference as though fully set forth herein at length.

61.    Plaintiff Second Story and Defendant BTB are parties to the Nondisclosure Agreement dated April 18, 2016 and attached hereto as Exhibit 2.

62.    At all times Defendant McHenry and his team (Defendants Herman and Offenhartz) was and is bound by the Nondisclosure Agreement both individually and through Defendant McHenry's business alter-egos (Defendants MAC, Prestige and BTB).

63.    The Nondisclosure Agreement expressly prohibits Defendants from contacting, initiating contact or attempting to do business with Plaintiff's business contacts, vendors, customers or consultants.  Exh. 2, ¶ 7.

64.    The Nondisclosure Agreement also prohibits Defendants from using Confidential Information for their own benefit or for the benefit of third parties without Plaintiff's prior written consent.

5139475v1

65.     In violation of the Nondisclosure Agreement, Defendants contacted and attempted to contact Plaintiff's vendors, customers and consultants.

66.     Defendants recently contacted The Juday Group, a company which provides professional services to Plaintiff for policy development, business development and media relations, to induce The Juday Group to terminate or circumvent its contract with Plaintiff.  See Exh. 3.

67.     Defendants are also, upon information and belief, falsely claiming ownership of Plaintiff's patented and proprietary technology as a means to interfere with Plaintiff's current contracts and prospective contracts.

68.     Plaintiff has not provided written or oral consent to Defendants' to use of its Confidential Information.

69.     Defendants' actions aforesaid and as detailed in the Complaint at length constitute material breaches of the Nondisclosure Agreement.

70.     Plaintiff Second Story Farming has suffered harm, and continues to be harmed, as a direct and proximate result of Defendants' breach of the Nondisclosure Agreement.

71.     Pursuant to ¶ 9 of the Nondisclosure Agreement, as a consequence of Defendants' breach, Plaintiff is entitled to the greater of $1,000,000.00 in liquidated damages or any award of damages issued by the Court, plus interest, costs, attorney's fees and legal fees.

**WHEREFORE,** Plaintiff demands judgment in its favor and against Defendants, jointly and severely in an amount in excess of $1,000,000.00, plus attorney's fees, costs, fees, punitive damages and other such relief as this Court may deem appropriate.

## COUNT III
### FRAUD

72.     Plaintiff hereby incorporates the above paragraphs by reference as though fully set forth herein at length.

73.     Over the course of the past year Defendants have constructed and carried out a fraud upon Plaintiff.

74.     The fraud was specifically designed to place the company in a financially stressed position in order to allow Defendants the opportunity to extort a majority share of the corporation's stock at a diminished value for financially "rescuing" the company as part of a bid to seize control of the company.

75.     On or about June of 2017, Defendant McHenry and Defendant Prestige, directed Plaintiff to hire The Juday Group as business consultants and lobbyists.

76.     Defendant McHenry, functioning as the Plaintiff's CPA assured Plaintiff it could afford the $20,000.00 monthly cost of The Juday Group.

77.     To bolster this statement of financial ability the Defendants made false statements that they would generate enough new investment in Plaintiffs business to cover the monthly cost of the Juday Group.

78.     Defendants had no intention of seeking new investment for the Plaintiff and simply wanted to create further stress on the Plaintiff's finances.

79.     Plaintiff has incurred $240,000.00 in unnecessary expenses and costs as a result of The Juday Group contract.

80.     On or about May 2017, Defendants McHenry, Herman and Offenhartz introduced Plaintiff to Mr. Louis Campisano of S & F Holdings, LLC.

13

81. At Defendants' direction, Plaintiff expended a month of corporate and staff resources to deliver a proposal to Mr. Campisano, to the complete exclusion of other business opportunities.

82. Defendants indicated Mr. Campisano was their exclusive client and that Plaintiff was not to engage him separately or without their presence.

83. On or about August 1, 2017, the Defendants McHenry, Herman and Offenhartz created and emailed a fraudulent Purchase Order in the amount of $38,795,000.00 to Plaintiff. *See* Exhibit 4.

84. Using this fraudulent Purchase Order as a means of knowingly lying to Plaintiff by inflating the Plaintiffs financial and immediate corporate health, Defendant McHenry, directed and encouraged Plaintiff to expend significant amounts of its reserve cash in re-tooling and expanding Plaintiff's manufacturing capacity in order to deliver on the Purchase Order in a timely fashion, again to the exclusion of all other business opportunities.

85. Defendants McHenry, Herman and Offenhartz, using this fraudulent Purchase Order as a means of singing their own praises, also began their attempts to claim compensation for their "work" in the form of 40% of the common stock from the Plaintiff before any funds under the Purchase Order were ever received.

86. Defendant McHenry through his alter-ego MAC further certified the existence and validity of the Purchase Order and Plaintiffs sound financial position to third parties with whom Plaintiff has contracted with for future ventures and dealings.

87. In late September or early October 2017, when the initial deposit under the Purchase Order was not received, Defendant McHenry represented he would address it and "fix"

the problem but that this would require additional compensation and bumped his demands to as much as 50% of the company's common stock.

88.     In fact, and contrary to Defendants' representations, Mr. Campisano's signature on the Purchase Order is a forgery and the Purchase Order is wholly fraudulent. *See* Exh. 5.

89.     Defendants' representations were false and were material to the actions taken by Plaintiff.

90.     Plaintiff Second Story Farming has been harmed as a direct and proximate result of Defendants' fraud.

**WHEREFORE,** Plaintiff demands judgment in its favor and against Defendants, jointly and severely, together with an award for compensatory damages, costs, fees, attorney's fees, punitive damages and such other relief as this Court may deem appropriate.

<u>COUNT IV</u>
**BREACH OF FIDUCIARY DUTY**

91.     Plaintiff hereby incorporates the above paragraphs by reference as though fully set forth herein at length.

92.     Defendant McHenry's actions are a clear breach of his fiduciary duties to Plaintiff as a licensed CPA in the Commonwealth of Pennsylvania.

93.     Defendants McHenry, PC, MAC, Herman and Offenhartz knowingly conspired to create false business conditions around Plaintiff and its operations.

94.     Defendant McHenry and his business alter-egos knowingly lied to their client (Plaintiff) about a Purchase Order and the soundness of certain business expenditures.

95.     Defendant McHenry knowingly directed Plaintiff to take a course of business action that was designed by Defendant McHenry to place the Plaintiff in financial jeopardy.

5139475v1

96.     Defendant McHenry falsely manipulated Plaintiffs financial position for his own personal gain.

97.     Defendant McHenry lied about Plaintiffs financial position for his own personal gain.

98.     Defendant McHenry has failed to provide tax and business services for which he was paid.

99.     Defendant McHenry took corporate records and property with the intent of hiding information from Plaintiff and placing Plaintiff in financial harm for Defendant's own personal gain.

100.    Defendant McHenry may also have purposely exposed Plaintiff to potential tax liability.

101.    Defendant McHenry has knowingly breached the Nondisclosure Agreement for his own personal gain.

102.    Defendant McHenry has and continues to slander Plaintiff for his own personal gain.

103.    Defendant McHenry is tortuously interfering with Plaintiffs existing and pending contracts for his own personal gain.

104.    Defendant McHenry, in conjunction with the other Defendants, has conspired with currently unknown individuals to illicitly seize control of Plaintiff, as a corporate entity.

105.    Plaintiff has, and continues to, suffer significant damages as a direct and proximate result of Defendant McHenry's breach of his fiduciary duties.

**WHEREFORE,** Plaintiff demands judgment in its favor and against Defendant McHenry, together with an award of compensatory damages, costs, fees, punitive damages, attorney's fees and such other relief as this Court may deem appropriate.

COUNT V
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS**

106.   Plaintiff hereby incorporates the above paragraphs by reference as though fully set forth herein at length.

107.   Defendants are tortuously interfering in Plaintiff's existing contractual and business relationships.

108.   Defendants have contacted Plaintiff's Lobbyist and attempted to insert themselves and direct the existing business relationship away from Plaintiff. See Exhibit 3.

109.   Defendants have similarly contacted Plaintiff's business contact in Colorado stating they represent a group of investors that want to take over Plaintiff's business activities.

110.   Plaintiff has received calls from several other business partners in current and pending joint ventures, clients, associates and contacts stating they have received similar communications.

111.   Defendant has no authority to contact these individuals on behalf of Plaintiff.

112.   No other investor or shareholder in Plaintiff, as a corporate entity, has authority to contact these individuals on behalf of Plaintiff.

113.   Actions of this sort by Plaintiff's existing shareholders and investors would also violate their individual Nondisclosure Agreements, be a breach of duty to the corporation and the other shareholders and investors and subject such individuals to litigation.

17

114.   These communications are spurious, false and slanderous and are specifically designed to further damage the business of Plaintiff and direct the business activity toward Defendants for their own personal gain.

**WHEREFORE,** Plaintiff demands judgment in its favor and against Defendants, jointly and severely, together with an award of compensatory damages, costs, fees, attorney's fees, punitive damages, and such other relief as this Court may deem appropriate.

### COUNT VI
### SLANDER

115.   Plaintiff hereby incorporates the above paragraphs by reference as though fully set forth herein at length.

116.   By their actions Defendants have knowingly slandered Plaintiff.

117.   Defendants' illicit communications with Plaintiff's existing and pending business partners, clients and contacts knowingly spread and used false information created by Defendants specifically designed to diminish Plaintiffs standing and character in the business community, do damage to Plaintiffs current business dealings and falsely create a fear of future dealings with Plaintiff.

118.   Defendant McHenry, using the business entity "Brotherly Budds" and stating he represents "investors" and the "Russians" continues to this day to attempt to contact Plaintiff's clients, business partners, and contacts and to interfere in these relationships by spreading lies and falsehoods of Defendant McHenry's own creation.

119.   As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer substantial non-monetary and monetary damages.

5139475v1

**WHEREFORE,** Plaintiff demands judgment in its favor and against Defendants, jointly and severely, together with an award of compensatory damages, costs, fees, attorney's fees, punitive damages and such other relief as this Court may deem appropriate.

<u>COUNT VII</u>
**THEFT OF CORPORATE PROPERTY**

120.    Plaintiff hereby incorporates the above paragraphs by reference as though fully set forth herein at length.

121.    Defendants acted and arranged events to deprive Plaintiff of its property.

122.    Defendants McHenry and MAC, in a knowing and purposeful manner, acquired corporate records for the purpose of providing bookkeeping, accounting and tax services but had no intention of providing the services.

123.    Defendants' intent was to hide information from Plaintiff, further compromise Plaintiff's financial position and operations and prevent Plaintiff from the discovery of Defendants' bad acts.

124.    Defendants have illegally converted Plaintiffs property and refuse to return it.

125.    Defendants had no intention of using the records and property in providing the services for which they were paid.

**WHEREFORE,** Plaintiff demands judgment in its favor and against Defendants, jointly and severely, together with an award of compensatory damages, costs, fees, attorney's fees, punitive damages and such other relief as this Court may deem appropriate.

<u>COUNT VIII</u>
**BREACH OF LOAN AGREEMENT**

126.    Plaintiff hereby incorporates the above paragraphs by reference as though fully set forth herein at length.

5139475v1

127.    In or about early September 2017, Defendants McHenry and Prestige solicited an emergency short term loan of $25,000.00 from Plaintiff so he could complete a project for his own personal gain. A copy of the Agreement is attached as **Exhibit 7**.

128.    Defendants have failed to honor the Loan Agreement and repay Plaintiff.

129.    Plaintiff has suffered damages in the amount of $25,000.00, plus interest and costs as a direct and proximate result of Defendants breach.

**WHEREFORE,** Plaintiff demands judgment in its favor and against Defendants, jointly and severely, together with an award of compensatory damages, costs, fees, attorney's fees, punitive damages and such other relief as this Court may deem appropriate.

## COUNT IX
## UNJUST ENRICHMENT

130.    Plaintiff hereby incorporates the above paragraphs by reference as though fully set forth herein at length.

131.    Defendant McHenry and MAC have received payment for basic bookkeeping and tax accounting services in the amount $3,200.00 in the last quarter of 2017.

132.    Defendants have failed to provide those services.

133.    Plaintiff covered $13,000.00 in travel expenses for Defendants.

134.    Reimbursement of these travel expenses from clients of Plaintiff were received by Defendant McHenry but never forwarded back to Plaintiff.

135.    Defendants have been unjustly enriched in the amounts of $3,200.00 and $13,000.00.

**WHEREFORE,** Plaintiff demands judgment in its favor and against Defendants, jointly and severely, in the amount of $16,200.00, plus the award of such other costs, fees, damages, attorney's fees and punitive damages as this Court may deem appropriate.

5139475v1

Respectfully submitted,

KAPLIN STEWART MELOFF REITER & STEIN, PC

By: _____
MARC B. KAPLIN, ESQUIRE
SANDHYA M. FELTES, ESQUIRE
Attorneys for Plaintiff
Second Story Farming, Inc.
910 Harvest Drive, PO Box 3037
Blue Bell PA 19422
610-941-2561 Telephone
610-684-2011 Facsimile
mkaplin@kaplaw.com
sfeltes@kaplaw.com
Attorneys for Plaintiffs

Dated:  1/29/18

21

5139475v1